**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NANCY WALKER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No.<br>04-5448 (NLH)<br><br><br>**OPINION** |

**APPEARANCES:**

STEVEN MARK JANOVE
CEDRONE & JANOVE
413 ROUTE 70 EAST
CHERRY HILL, NJ 08034
*Attorney for Plaintiff Nancy Walker*

GREGORY HREBINIAK
U.S. DEPARTMENT OF JUSTICE
BEN FRANKLIN STATION
PO BOX 227
WASHINGTON, DC 20044
*Attorney for Defendant United States of America*

**HILLMAN, District Judge**

## I. BACKGROUND

This matter involves a quiet title action filed against the United States. Plaintiff, Nancy Walker, alleges that the Internal Revenue Service ("IRS") issued assessments against her and her husband, Joseph T. Walker, on July 30, 1996, for unpaid income taxes and related interest and penalties for tax years 1978 to 1981. By operation of 26 U.S.C. § 6321, on the day the assessments were made federal tax liens also arose and attached to all of plaintiff's property and rights to that property. In

1997, the IRS filed notices of federal tax liens against the Walkers. The notices of federal tax liens protect the government from third-party claims against the Walkers' property in accordance with the provisions of Section 6323 of the Code. The notices do not affect the statutory liens that arose automatically against the Walkers.[1]

On or about April 21, 2002 and May 16, 2002, the IRS issued Certificates of Release of Federal Tax Liens, Forms 668, as to plaintiff Nancy Walker. In accordance with 26 U.S.C. § 6015, the effect of the certificates was to release the lien previously imposed against Ms. Walker's interest in her property for the tax years 1978-1981. Notwithstanding the release of the liens, sometime after 2002, IRS Revenue Officer, Franklin D. Clark, engaged in efforts to collect the obligations associated with the previously released tax liens. In or about April 2004, Mr. Clark was advised by counsel for Ms. Walker that the liens were released and, therefore, no tax obligation existed.

A few months later, on June 4, 2004, the IRS issued notices of federal tax liens against Nancy Walker for the tax years 1978-1981, relating to the tax liability that had previously been

[1] As was explained by counsel during hearings held in this matter, there is no requirement that the IRS file a notice of a statutory lien. The decision whether to file a notice of a lien after an assessment depends upon several factors including whether the taxpayer is in debt or in collections and the taxpayer's other assets.

released. It was determined by the IRS that the certificates filed in 2002 releasing Ms. Walker from the 1979-1981 tax liability had been filed in error. The government states that the IRS meant to release only the fraud penalties assessed against Ms. Walker, but instead inadvertently released the entire lien. Although the IRS re-filed the notices of tax liens approximately two years after it erroneously released the liens, the government admits that the re-filed notices were "ineffective in countering the releases for 1979 through 1981." Accordingly, in May 2005, the IRS filed Revocations of Release of Federal Tax Lien, Forms 12474, which were recorded in Atlantic and Cape May counties where plaintiff owns real property. The revocations were filed within the ten year statute of limitations on collection of the liabilities assessed on July 30, 1996.[2]

Before the Court is defendant's third motion for summary judgment.[3] In its motion, the government argues that the

---

[2] On July 24, 2006, the United States filed suit against Joseph and Nancy Walker to reduce to judgment the federal tax assessments made on July 30, 1996. That action is currently pending.

[3] The United States' first motion for summary judgment was denied without prejudice after hearing held before the Honorable Freda L. Wolfson on July 27, 2005. After hearings held before this Court on January 31, 2007, and on March 16, 2007, defendant's second motion for summary judgment was denied in part and granted in part. The Motion was granted on the issue that a proper tax assessment was made on July 30, 1996, against plaintiff by the IRS for tax deficiencies for the years 1979 through 1981, but denied without prejudice on the issue of the legal effect of the May 2005 revocation of the release and

revocations of release issued in 2005 were effective in countering the releases and reinstating the tax lien and underlying tax liability against Ms. Walker. Conversely, Ms. Walker argues that the release of tax liens in 2002 was proper because she is entitled to joint and several liability and/or to "innocent spouse" relief; that the declaration of the IRS revenue officer was factually incorrect; that the revocations of release are not valid because the IRS failed to follow the statutory notice requirements of 26 U.S.C. § 6325(f)(2)(A), and because she informed the IRS about the release of the liens and filed her complaint almost six months before the IRS filed the revocations.

## II. JURISDICTION

This Court exercises jurisdiction pursuant to 28 U.S.C. § 1340 (providing for original jurisdiction over a civil action arising under any Act of Congress providing for internal revenue) and 28 U.S.C. § 1346(a)(1) (providing for original jurisdiction over any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected).

---

whether a current, valid lien exists on the property. Although plaintiff's counsel's request for additional discovery on the issue of the revocation was granted, no additional discovery was conducted and defendants filed a third motion for summary judgment.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has

met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B. Release of Tax Lien**

It has already been determined by the Court that the proper tax assessment was made on July 30, 1996, against plaintiff by the IRS for tax deficiencies for the years 1979 through 1981, and that the lien against plaintiff's property arose automatically at that time. Under § 6321 of the Internal Revenue Code (26 U.S.C. § 6321), if a person refuses to pay a tax after notice and demand, a lien shall arise "in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The tax lien arises automatically at the time of the assessment and continues thereafter until the underlying tax liability "is satisfied or becomes unenforceable by reason of lapse of time." See 26 U.S.C. § 6322; United States v. National Bank of Commerce, 472 U.S. 713, 719 (1985).

There is no disagreement that the lien and underlying

liability were extinguished in 2002 when the IRS filed the certificates of release of tax lien. It is also clear that § 6325(f)(2) of the Code provides that if a certificate of release was issued erroneously, and the collection statute has not expired, the IRS may revoke the release and reinstate the lien.[4]

**C. The Underlying Tax Liability**

The law is clear that a District Court has jurisdiction under 28 U.S.C. § 2410 to hear cases challenging the procedure followed by the IRS but not the underlying tax liability. See Robinson v. United States, 920 F.2d 1157, 1160 (3d Cir. 1990)(citing Estate of Johnson, 836 F.2d 940, 944 (5th Cir. 1988) ("Several circuits have held that a taxpayer may use section 2410(a) to contest the procedural regularity of a lien."); Pollack v. United States, 819 F.2d 144, 145 (6th Cir. 1987) ("A suit under 28 U.S.C. § 2410 is proper only to contest the procedural regularity of a lien; it may not be used to challenge

---

[4] 26 U.S.C. § 6325(f)(2) - Revocation of certificate of release or nonattachment - states in relevant part:

> If the Secretary determines that a certificate of release or nonattachment of a lien imposed by section 6321 was issued erroneously or improvidently... and if the period of limitation on collection after assessment has not expired, the Secretary may revoke such certificate and reinstate the lien–
>
> (A) by mailing notice of such revocation to the person against whom the tax was assessed at his last known address, and
>
> (B) by filing notice of such revocation in the same office in which the notice of lien to which it relates was filed (if such notice of lien had been filed).

the underlying tax liability.”). Plaintiff is arguing that the release was properly issued pursuant to 26 U.S.C. § 6015 (relief from joint and several liability on joint return or “innocent spouse” relief).[5] Such argument pertains directly to the underlying tax liability and, therefore, this Court does not have jurisdiction to decide that issue on the merits. See Powers v. C.I.R., No. 06-2391, 2007 WL 2595401, at *3 (D.N.J. Sept. 4, 2007) aff’d Powers v. C.I.R., No. 07-3906, 2007 WL 4385491, at *1 (3rd Cir. Dec. 17, 2007) (stating “[t]he District Court correctly determined that it lacked jurisdiction to the extent that Powers sought to challenge the underlying tax liability determination for 2001.”). This Court only has jurisdiction to consider any alleged procedural irregularities by the IRS concerning plaintiff’s claim. See Robinson, 920 F.2d at 1160.

[5] Plaintiff argues that the release of the tax liens in 2002 was not done erroneously because she is entitled to relief from joint and several liability on the joint return or “innocent spouse” relief under 26 U.S.C. § 6015. Plaintiff previously raised this same defense in an action before the Tax Court. After consideration of the evidence and full analysis, the Tax Court decided on the merits that Ms. Walker was not entitled to relief as an innocent spouse under section 6013(e). See Walker v. C.I.R., 70 T.C.M. 1183 (1995). Therefore, in addition to lacking jurisdiction over the underlying tax liability, the Court has not been provided any argument by plaintiff as to why res judicata would not apply to bar consideration of this same issue between the same parties under the same facts. See Bottenfield, 442 F.2d 1007, 1008 (3d Cir. 1971) (stating that taxpayers’ liabilities were litigated on the merits in the Tax Court and once final are binding on taxpayers, and are res judicata in subsequent action)(citations omitted).

**D. Clark Declaration**

Plaintiff questions the veracity of Mr. Clark's declarations filed on May 31, 2005, and on February 6, 2007, in support of the government's motions for summary judgment. With regard to the May 31, 2005 declaration, plaintiff points out that Mr. Clark did not make any statements concerning the revocations of release that were filed in May 2005. Although we agree that such information was pertinent and should have been included, the date on the declaration was March 2005 (the day was left blank) and, therefore, Mr. Clark appears to have signed the declaration in March 2005 before the revocations were filed. The declaration was not filed by the government until May 2005 when it filed its motion for summary judgment.

With regard to the February 6, 2007 declaration, plaintiff notes that Mr. Clark declares that the revocations were filed on May 23, 2005, when the "documents themselves suggest otherwise." Although the stamped filed copy of the revocation filed in Atlantic County shows that it was filed on May 18, 2005, the stamped filed copy of the revocation filed in Cape May County shows that it was filed on May 23, 2005. Thus, it appears that the declaration that both were filed on May 23, 2005 is just an oversight or typo. Stated differently, the discrepancy is minor and does not undermine the basic import of the declaration, i.e., that the IRS filed and recorded revocations in the latter part of

May 2005.

Summary judgment may not be defeated by simply pointing out minor or inconsequential errors in the moving party's papers. See Anderson, 477 U.S. at 247-48 (summary judgment appropriate where factual dispute is not significantly probative). Rather, the burden of the non-moving party is to assert properly supported facts which show a disputed fact which is material to the legal issues at stake. In this case that issue is whether the IRS filed and recorded the revocations on or about the dates alleged. The basic fact that these revocations were filed on or about May 23, 2005, and recorded in the relevant county offices has not been disputed by the plaintiff. Absent such proof, there is no "genuine" issue of material fact for the fact finder to consider. Moreover, a non-moving party may not defeat a properly supported motion for summary judgment by merely contesting the veracity of the movant's witness. S.E.C. v. Antar, 44 Fed.Appx. 548, 554 (3d Cir. 2002) (asserting that jury might disbelieve moving party's affidavit does not defeat summary judgment).

**E. Notices of the Revocation of Release**

Plaintiff argues that she did not receive notice of the revocation and, therefore, the government failed to comply with 26 U.S.C. § 6325(f)(2)(A) which requires that notice of the revocation be mailed to the taxpayer at his last known address. In support of this argument, plaintiff's counsel attached a

declaration in which he states that he did not receive the notice and that he spoke with Nancy Walker who told him that she did not receive the notice.[6]

Plaintiff's argument fails because §6325(f)(2)(A) does not require that the taxpayer receive the notice; it only requires that the IRS mail the notice to the taxpayer at his last known address. See Jones v. U.S., 889 F.2d 1448, 1450 (5th Cir. 1989) (stating that "[t]here is no merit to the taxpayers' contention that the notice was invalid because they did not receive it."). The declaration of Franklin D. Clark, Revenue Officer with the IRS, states that the notices of revocation were mailed to the taxpayer at the address indicated on the revocations on May 23, 2005. Although Mr. Cedrone states that neither he nor Ms. Walker received the notice, receipt is not a statutory requirement. Id. (concluding that the method of notification insures that "... the vast majority of taxpayers will be informed that a tax deficiency has been determined against them without imposing on the Commissioner the virtually impossible task of proving that the notice actually has been received by the taxpayer."). Plaintiff

---

[6] The statements in Mr. Cedrone's affidavit about what Ms. Walker told him are hearsay. However, "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony...." King v. City of Philadelphia, 66 Fed.Appx. 300, 304 (3d Cir. 2003) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 466 n. 12 (3d Cir. 1989); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). We assume that Ms. Walker would be available to testify at trial in this matter.

has not presented facts that could lead a fact finder to conclude that the notice was not mailed to her last known address.[7] As with the issue of the filing date of the May 2005 revocation, plaintiff has failed to create a "genuine" issue of material fact.

**F. Reinstatement of the Tax Liability and Liens**

Finally, plaintiff argues that the refiled notices of tax liens and revocations of release were filed after the taxpayer informed the IRS that the underlying liability had been extinguished and, therefore, the IRS cannot later use information gained from the taxpayer to reinstate the liens or file revocations of the releases and reinstate the liability. Also, plaintiff maintains that her lawsuit to quiet title enjoined the IRS from filing a revocation of a release of lien. The government argues that plaintiff's complaint cannot bar the IRS from filing the revocation of release because the Anti-Injunction Act prevents any injunction against the IRS in its efforts to collect taxes.

The Anti-Injunction Act states in pertinent part that "...

[7] Plaintiff argues in her sur-reply that the certification of Mr. Clark is inadequate because it does not include a proof of mailing and because it is written in the passive voice. Mr. Clark's declaration states that it was filed under the provisions of 28 U.S.C. § 1746(2) (unsworn declaration under penalty of perjury) and signed under penalty of perjury. As such, it provides affirmative evidence of the mailing to Ms. Walker. There is no statutory requirement that a proof of mailing be filed.

no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." See 26 U.S.C. § 7421; Malkin v. U.S. 3 F. Supp.2d 493 (D.N.J. 1998). A judicially created exception to the Act[8] applies if "(1) it is clearly shown that under no circumstances could the United States ultimately prevail, and (2) equity jurisdiction exists." Malkin,3 F.Supp.2d at 498 (citing Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7 (1962)). The most liberal view is taken in assessing the IRS's chance of prevailing and the taxpayer has the burden of proving both elements. Id. (citing Flynn v. United States, 786 F.2d 586, 591 (3d Cir. 1986)).

In this case, equitable considerations are raised because at the time that plaintiff filed her lawsuit, the IRS had not yet filed its revocations and, therefore, at that time there was no underlying liability. The liability only arose after the IRS filed the revocations in May 2005, approximately six months after plaintiff filed this action to quiet title. Also, the record indicates that the IRS was alerted by plaintiff to the fact that the tax liability had been previously extinguished and the liens removed. The concern raised by the plaintiff is that the law

---

[8] In addition, there are statutory exceptions to the Act that have not been raised by the plaintiff and do not appear applicable in this case. See 26 U.S.C. § 7421.

should not discourage a taxpayer from being forthright about her tax liability or have her honesty rewarded by reimposing tax liabilities previously extinguished.

While the facts of this case do not represent one of the IRS's finest moments, it is equally clear that the equities in this case do not command that Ms. Walker receive immunity from an otherwise valid tax liability because of the information she provided to the IRS. The underlying tax liability was properly assessed against Ms. Walker both procedurally, and, as a result of the Tax Court decision, as a matter of substantive law. It was erroneously removed by the IRS when it attempted to remove the fraud penalties for Ms. Walker's benefit, and instead inadvertently removed the entire lien. It was only after the IRS, again erroneously but diligently, attempted to collect on an extinguished tax liability that plaintiff informed them of the removal. The IRS was not informed about the removal because of altruistic concerns by the plaintiff but as an attempt to avoid the underlying tax liability. In the end, it is Ms. Walker who seeks an inequitable result by attempting to gain a windfall because of the government's non-malicious procedural errors.

In addition, the filing of plaintiff's complaint does not enjoin the IRS from filing the revocations of release of liens. The only bar to the filing of a revocation under 26 U.S.C. § 6325(f)(2) is the statutory limitations period, which is not at issue in this case. Therefore, the Anti-Injunction Act applies

and plaintiff's complaint to quiet title does not bar or enjoin the IRS from subsequently filing a revocation of the release of lien and collecting the underlying taxes.

## IV. **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is granted. An Order consistent with this Opinion will be entered.

s/Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey